Thank you. We are now ready to hear argument in Starr Indemnity v. Rolls-Royce and I believe we have Mr. Cunningham and Mr. Klein. Welcome back. I'm sorry? I'm saying welcome back. I was on the first go-around case. Ah, okay. Good morning. So, we will begin with Mr. Cunningham. Thank you, Your Honor. I would like to reserve five minutes for rebuttal and I will keep track of my time. May it please the Court. This lawsuit arises out of the crash of a medical transport helicopter in 2014. Unbeknownst to MedTrans, at the time, the engine failure that led to the crash was caused by a faulty turbine wheel that Rolls-Royce had fraudulently concealed from MedTrans and the rest of the helicopter community. Rather than standing by its defective product, Rolls-Royce moved for summary judgment claiming that the economic loss rule exempted it from liability because the engine was an integrated part of the entire helicopter and thus the ELR precluded liability because there was no personal injury or damage to other property. MedTrans, however, pointed out that the medical suite of equipment on board was totally destroyed, which is undoubtedly other property. What evidence is there in the record of damage to medical equipment? Excellent question, Your Honor. There are actually four places in the record where there is evidence of the medical equipment on board. First of all, the NTSB report, the accident report, which is at record site ER 075, lists it as a medical transport flight. By definition, in order for a helicopter under the NTSB purview to be a medical transport flight, it has to be outfitted with medical equipment capable of providing medical services. That's the first place in the record. Counsel, is that as a matter of law that there has to be certain equipment or can it be stethoscopes and disinfectants and medically trained people? A little bit of both, Your Honor. As a matter of law, it is a matter of NTSB regulatory rules that in order for a medical transport flight to be classified as such, it must be capable of performing and providing medical services, including such things as... What kind or what extent or with what equipment? Does the regulation specify that? Your Honor, no. The regulation does not specify the type and extent of equipment, but it does require that the helicopter be capable of providing medical treatment. Another location in the record, and this is one that we did not identify in our briefing, but we did identify it yesterday in preparation for today, and it's in the information provided by Rolls-Royce and their statement of facts. It is record site ER116. That is ER116. That is the minimum equipment list for the aircraft that was on board at the time of the crash.  four days before the crash, and on that equipment list provided by Rolls-Royce, halfway down the page is the listing of the air med. That is the air medical equipment. It is required by NTSB and FAA rules to be inspected every 12 months or 150 hours of operation, whichever comes first. And as the court will see on ER116 supplied by Rolls-Royce, this aircraft was outfitted with mandatory air medical equipment that was required to be inspected and had been inspected approximately six months before the crash. Excuse me, I had a question about that. Is that with respect to this specific helicopter because there was another piece of evidence that pertained to a different helicopter? Yes, and I'm glad you brought that up. I would like to fall on the sword and make sure I clear up any discrepancies there. MedTrans had two helicopters, and I will shortcut the designation. One was numbered 515, Mike Tango. The other one was 509, Mike Tango. The engines were swapped. That is the discrepancy with respect to the air medical suite estimate from Executive Air Transport. That was for 515, not 509. But Record Site 116 is the minimum equipment list for the accident helicopter that crashed and was a total loss. So I do need to fall on the sword. You said 116 is a document from Rolls-Royce? It was in Rolls-Royce's statement of fact as part of the appellate record. They are the ones that put it in the appellate record. It says it's an aircraft status sheet. Is this like who created this document? What is this? It is a MedTrans-created document, but it was imported into the record by Rolls-Royce. The source of the document itself is a MedTrans-generated report. It is known as an MEL, or minimum equipment list. That is a document that is generated by the aircraft operator. In this particular case, MedTrans. I see the two lines that say air med inspection in the middle. What does that tell us about anything? That tells us that there was an air medical suite installed on the helicopter as of, and if you look in the upper right-hand corner, Your Honor, as of April 10, 2012, four days before the accident. That was the last date that this list was updated. How do we know that that equipment was damaged in the crash? Excellent question, Your Honor. The proof of loss that was supplied by MedTrans to Star Indemnity was a sworn proof of loss for a total loss of the entire helicopter, including all the pertinences thereto. Given the way that it landed as described in the NTSB report, that could just mean that structurally it was unsound in a way that it was infeasible to repair it or uneconomical to repair it. It doesn't necessarily mean that every component in it was, it wasn't like it burst into flames and incinerated every item in it. How do we know from that hard landing and the ski effect that's described that that damaged these particular components within it? Excellent question. Let me respond to that. In FAA parlance and NTSB rules and regulations, when an aircraft has been subjected to an overstress event as such as this one, when you have a hard landing with these skids being spread, the loads that are imparted into the airframe and all equipment installed on the airframe are considered to be overstressed, and per FAA rules, if they are determined to be irreplaceable or they may not be returned safely to service, they are a total loss. That also includes the medical equipment on board. How do we know that specifically? This seems to me to be a record that just cries out for somebody's affidavit saying here are the 14 things that were on board, and after this event 13 of them were completely unusable and had to be scrapped. It's just odd to me that we're being asked to rely on a series of what seem to me to be rather tenuous inferences. Your Honor, I appreciate that observation, and I would like to point out that when Rolls-Royce moved for summary judgment, they didn't even try to claim that the medical equipment was not other equipment or other property. Their MSJ was very simple. It said the engine is an integrated part into an entire product, and because of that the economic loss rule applies. We responded and said there was a medical suite on board that was totally destroyed. On reply, for the first time, they raised the issue that the medical equipment was either not identifiable or hadn't been sufficiently identified or was not destroyed. So under the pleading standards in Arizona, with the pleading rules, they raised for the first time on reply, which is not permitted, a factual dispute as to the status, sufficiency of the medical equipment. They didn't even challenge that it was destroyed. They simply raised the idea that medical equipment itself was not other property. So at this point in time, Rolls-Royce has never even claimed that the medical equipment was not destroyed. I appreciate your observation, and frankly I understand exactly where you're coming from, which is my point on summary judgment. This case was decided on summary judgment. But didn't they, in response to the statement of, you know, your statement of facts, and you had paragraph 34 is where this covered, they then filed something that said they deny, they said it's relevant, but they deny what you say in paragraph 34. Doesn't that put you to the unnoticed? You have to do something, your proof was deficient, and you need to do something to create a genuine issue as to other property? And they did that on reply, Your Honor, and per the Arizona rules, we were not permitted to respond to the reply, which is another issue with respect to the warranty claim on this case. We claim they provided two unsigned, undated general warranties. We said those are not proper on a response brief, in reply they provided an affidavit for the first time that attempted to prove up their warranty claims. Do you really deny that that's the applicable warranty for this? I mean, what I was puzzled by here is the log is in the record, and it has the tab that says warranty. Did it not come out in discovery what was behind that tab? No, it did not, Your Honor. We didn't get a chance to go that far in discovery. This case was originally up to the Ninth Circuit on a choice of law issue. As soon as the Ninth Circuit issued the opinion on the choice of law, Rolls-Royce moved immediately for summary judgment on economic loss rules. So this case has not been discovered at all, which is part of the gravamen of my complaint, is that the court granted summary judgment before any discovery was performed, and did not take all reasonable inferences in favor of star indemnity. I mean, if you look at the tab on ER 112, you can see the warranty tab. Now, the warranties that they supplied at 123 and 124, they're long documents that are supposed to be put in and then folded over or folded under. Yes. You can actually see on 112, you can read at least one line of the warranty that's folded underneath, and it matches exactly what's at the fold of what they produced. I mean, is it really? I understand the issue about authentication, and maybe the district court was lenient in letting them fix that in the last minute, but is there really any issue that that is the warranty that's behind that tab? To be perfectly honest with you, Your Honor, I don't know that there's going to be an issue with that with respect to the original form warranty that was allegedly shipped with the engine. We haven't had a chance to discover it, but I would also like to point out that what failed on this helicopter was a replacement turbine wheel that was purchased from Premier Turbines, and there is no proof in the record that any warranty accompanied that turbine wheel, which is actually what failed. In their conclusory affidavit, Mr. Sane's affidavit, that they supplied for the first time on reply in violation of the rules, he said in a conclusory statement, the spare part warranty was shipped with the turbine wheel. That's literally as far as he went. He can't prove, and he did not even attempt to prove, that Premier Turbines received it, acknowledged it, or passed it along. That's my issue with many of the things that occurred at the district court level is the judge granted summary judgment, and the only way that that was possible was to take all reasonable inferences in favor of Rolls-Royce and not in favor of Medtrans. I see that I've only got two and a half minutes left, so I won't be happy to answer any questions and continue going, but I would like to reserve a little time for rebuttal. You may do that. Thank you. May it please the court. My name is Tom Klein. I'm here on behalf of Rolls-Royce Corporation. Everything okay with audio? Okay. I honestly don't know why Medtrans couldn't provide something to actually prove what medical equipment was on the helicopter and prove that it was damaged. The fact of the matter is they didn't. What they told the trial court is, here's what they called an invoice listing the equipment on the helicopter, but now they acknowledge it's not an invoice, and it's not for this helicopter. It's not for N509MT or N515MT. Now the oral argument, he says, look at ER 116. That refers to an airbag inspected, and counsel says, what that means is what counsel said. They should have had an affidavit from somebody that said, no, no, no, there was equipment on here, whether it's using 116 or some other document, and here's what the equipment was, and it was damaged. They've never actually proved that there was equipment on here. But let's step back. What's your response to his argument that under the FAA regulations, all of the materials that were on the plane would have to be considered as unusable? Is that correct? I don't know if it's correct or not. I think he referred to NTSB regulations. Maybe it was FAA regulations, but whatever it was, it's outside the record. It's a new argument. Number two, we made the argument that everything on this helicopter, this medevac helicopter, is one product. And so it was damaged, it was totaled, and under the economic law school as interpreted by Texas, the recovery is only within contract for the product. And all of the stuff that's part of that product, including the engine and the medical equipment, assuming it was there, which they haven't actually proved, it's part of that product. So if you look at the Golden Thread case, Fifth Circuit just three weeks ago, interpreting Texas law and the economic loss rule, they basically say what Texas is doing is applying a foreseeability test or what they also use to say is reasonably contemplative. So if you can reasonably contemplate what is going to be damaged on the product, then it's covered by contract because the purchaser has to get head trans to protect themselves, which they did, by applying insurance on the helicopter. Here, if you accept their argument that it's a medevac helicopter that has some medical equipment on it, then you also have to assume that it's reasonable to contemplate that medical equipment could be damaged if a hard landing was foreseeable and the purchaser med trans should have protected themselves, which they did by applying insurance. With respect to the warranty claim, you already noted a couple of the things that there is a warranty tab that you can see in AR-112. You'll note a couple of other things. It's a six-ring binder. You can clearly see a picture of it in the AR-112. Then if you go to AR-123 and AR-124, the actual warranty, you can see there's six holes there that fit into that six-ring binder. It's what we used to call independent and district liability. As you noted, the warranty tab, the pages fold up to fit into the narrower notebook. The other thing is, on the very top of those pages, this is the warranty, the 250 C-40 slash C-47 series engine. This is the standard warranty that applies to all those engines. There's no question in this case, the engine on this helicopter was a C-47 series engine. What about his argument, what's your response to his argument that there isn't an adequate foundation for the warranty for the specific component that was replaced within the engine? The warranty for the component is at AR-126 and 127. It is a standard warranty. Again, if you look at the top, that's a standard warranty for a spare part for a Rolls-Royce engine in AR-126 and 127. Just looking on the face of the document, it's similar to the warranty document we were just looking at at AR-112 and AR-123 and AR-124. On the face of it is the warranty applicable to a replacement part. In this case, it's a spare part. Where is the declaration that tells us what that provides the authentication and foundation for tying this warranty document to this part? That's Thomas' declaration and the record site is the second. But he removes any doubt by saying, look, I've been working for Rolls-Royce for 37 years. This is the warranty for the engine. This is the warranty for the spare part. And, therefore, it's authenticated. But, again, if you step back a second, Dahler and Mettrian sued Rolls-Royce saying there was a violation of a breach of warranty. We've now provided the warranty so you can see what the language is in the warranty. I don't know what they were thinking of when they were suing us for a warranty, but if these aren't the warranty, why didn't they present an affidavit saying, no, no, no, this is the actual warranty and the provisions are thus and so? There's nothing. There's no reason to not believe that these are the correct warranties just on the face of the documents. And then to remove all doubt, we provide the declaration from Mr. Payne that tells you that these are the correct warranties. And under the terms of those warranties, the warranty, the compliant warranty, and the express warranty provisions have long since expired. Basically, six months or 1,000 hours of use, we go well beyond that. Even if you look at the replacement warranty, when that was put in, I think, in 2009, we're well beyond that time period and well beyond those hours for that and well beyond that. So, bottom line, the whole helicopter is the, I apologize, I wrote down the website somewhere for Mr. Payne's declaration. The crop would only rely on paragraph six and eight in his declaration, which lay the foundation, remove any doubt about the foundation for the warranty for the helicopter engine and for the replacement part. But it is then attached to this separate reply statement of facts, which is, starts at record site ER 24. So, it should be around 30 or so. Early in the record is Mr. Saintsville. Let me ask you, we've moved the law, applicable law from Arizona to Texas, and I've looked very carefully at that issue. If I understand correctly, your position is that the Texas Supreme Court's reasoning and analysis demonstrate a preference for relying on economic loss through contract rather than through tort law. And so, your argument is, if I understand it correctly, that this is not a tort issue, it's a contract issue under Texas law, and that there's a failure under the contract. Is there a specific case? I've read the cases that you have cited to us. I don't suppose the Supreme Court of Texas has relieved us by having a contract law. So, Judge Wallace, you're correct. We believe it's a contract, and I'm going to come right back to that. Mr. Saints declaration starts at ER 43. I apologize for the delay there. Getting back, Judge Wallace, to your question, I think the best case is the Grizzly Air Services, which is the Texas Court of Appeals opinion. The facts are very similar to ours, where the owner had two helicopters and they took the engine from one, and put it in another helicopter. Then there was a mishap that was claimed on the engine. That was an unpublished Court of Appeals opinion. However, the Fifth Circuit, three weeks ago, in the Golden Spread opinion, cited that case and relies on it in their attempt to do an eerie prediction of what the Supreme Court would do. And those are our two best cases. We've had a lot of other cases in the brief that all support that. The basic policy idea is, look, if the only injury is to the product itself, then the buyer can protect themselves by that, like I transcribed the bottom assurance here. Now, let's say this part landed in the helicopter, instead of in a seat belt, it landed on a house. Damage to the house. Clearly, in that circumstance, the owner of the house would have a court claim for the damage to the roof of the house, because that's not going to be reasonably possible. So, the fact that there could be some mishap that caused a hard landing of the helicopter, what MedTrans could reasonably contemplate is that would cause damage to the helicopter and anything on it, and they can, by contract, deal with that, which they did, again, by getting insurance. What's the best case from Texas for your position? I think it's the Grizzly case. Supported by the Golden Spread case, the brand-new case from the Fifth Circuit, which just came out eight weeks ago. You know, the Grizzly case, you could argue, it's unsighted. We cited a case from the Ninth Circuit, and it's okay. Just rely on those. And generally, you do rely on the intermediate appellate court if there's not a second Supreme Court ruling at that point. But the fact that the Fifth Circuit is relying on the Grizzly case trying to do exactly what you're being asked to do here with respect to the Texas law on the economic hospital, I think those two cases together are... Thank you. You're welcome. I'm not going to... Anything else I would do would just be belabouring, but I don't know. So I appreciate the time. Thank you. Your Honours, first... With respect to the warranty issue for the Prime Turbine, or the Premier Turbines, it is record site ER44. And all that is said, and I do want to quote it, so I make sure I quote it correctly. Mr. Sain says, on November 16, 2009, Premier Turbines replaced the subject engine's third-stage turbine wheel with part number or serial number. Rolls-Royce M250 spare module part-limited warranty was provided with the replacement third-stage turbine wheel. A true and accurate copy of the express manufacturer's warranty card, as kept by RRC in the ordinary course of its business, is attached as Exhibit 9. Nowhere does Mr. Sain say that Premier Turbines received, acknowledged, or obtained the warranty card. He says, without citation to any document, any invoice, any paperwork, he says, conclusorily, it was sent with it. He has no proof other than we have to take... He says it, so it must be true, and that is not proper for a self-serving, uncontrovertible affidavit filed on reply only. That's with respect to the warranty. With respect to the economic loss doctrine and the other property, Mr. Klein cites two, Golden Spread and Grizzly helicopters. There are two cases that say what they say, and neither one are applicable here. First of all, Grizzly was about whether a replacement engine was considered an integrated part into a finished helicopter. A helicopter can't fly without an engine. An engine's worthless without a helicopter. That's not our fact here. The fact that we had a swapped engine, he says, makes it dissimilar, but it has nothing to do with this case. Golden Spread, which was just issued by the Fifth Circuit three weeks ago, said that a digital controller that was installed onto a steam turbine to make the steam turbine work was not other property. In our case, we have a completely separate set of facts. Our other property is medical equipment on a helicopter. The helicopter does not need the medical equipment to run. In any respect, the medical equipment does nothing with respect to the operation of the helicopter. And conversely, the helicopter in no way affects the performance of the medical equipment. It is truly separate equipment that was purchased after the original sale, and under Saratoga Fishing and NICOR Supply, those two cases clearly support the proposition that after market, other property procured through a separate transaction after the original delivery is other property. I'm over my time, Your Honor, so I will yield. Thank you very much. We appreciate the arguments from both of you. They've been very helpful. The case just argued is submitted. We will take another short break before our next case, which is Virtue Global Holdings v. Reardon.
judges: Wallace, Graber, Collins